1  STANLEY GOFF (Bar No. 289564)
   LAW OFFICE OF STANLEY GOFF
2  15 Boardman Place Suite 2
   San Francisco, CA 94103
3  Telephone: (415) 571-9570
   Email: scraiggoff@aol.com
4

5  Attorney for Plaintiffs

6                UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7

| | |
|---|---|
| TREASURE ISLAND FORMER AND CURRENT RESIDENTS, ANDRE PATTERSON, FELITA SAMPLE, ***Including All Parties Listed and Incorporated Herein;*** and Doe Plaintiffs 1-2,000, on behalf of themselves, and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TREASURE ISLAND DEVELOPMENTAUTHORITY, et al. <br><br> Defendants. | Case No. 3:20-cv-1328 <br><br> **AMENDED COMPLAINT FOR DAMAGES** <br><br> **1. FALSE AND MISLEADING STATEMENTS** <br> **2. NEGLIGENCE FEAR OF CANCER** <br> **3. STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES** <br> **4. VIOLATION OF PROPOSITION 65** <br> **5. PUBLIC NUISANCE** <br> **6. PRIVATE NUISANCE** <br> **7. CIVIL CONSPIRACY** <br> **8. INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs FORMER AND CURRENT TREASURE ISLAND RESIDENTS

("PLAINTIFFS"), individually and on behalf of all others similarly situated, demanding a jury

trial, bring this action against all named Defendants as well as DOES 1-25; inclusive, for general,

consequential, compensatory, punitive, injunctive relief and statutory damages, costs and

attorneys' fees resulting from defendants' unconstitutional and tortious conduct.

1

# I. PARTIES

1. Class Plaintiffs are former and current residents of Treasure Island, consisting of individuals who have been living in, or had substantial contact with, the Treasure Island Community, from 2006 to the present. Plaintiffs also include the following adult and minor Plaintiffs and those Plaintiffs listed and incorporated herein as though fully set forth in this paragraph, plus Doe Plaintiffs 1-2,000:

1.  Andre Patterson
2.  Felita Sample
3.  Cierra Hammond

4.  Earnstine Davis
5.  Steven A. Arnold
6.  Ralph Greene
7.  Michelle Baker-Greene
8.  Devonaire Lemons
9.  Rarity Lemons
10. Leerma Petterson
11.  Charles McGee
12.  Ruth Ann Booker
13. Ayana Arnold
14. Arlando Arnold
15. Terri Johnson
16. Kent Davis
17. Teresa Johnson
18. Lailonnie Arnold
19.  Victor Wilson
20. Ronald L. Johnson
21. Johnathan Johnson
22. Flint Collins
23. Peter Boutte
24. Otis Broughton
25. Stanley Daglow
26. Arthur Glen Ayers
27. Alfonzo B. Williams
28. Donald Johson
29. Tracy Marks
30. Vancois D. Amoun

31.  Andre Patterson III
32.  Nicole Walker
33. Lakrista Jackson
34. Michelle Mathews
35. Donna Marie McDaniel
36. Aaron Medler
37. Shamila Butler
38. Bobbie Johnson
39. Camelia Johnson
40. Joseph Spooner
41. Calvin Johnson
42. Tramila Butler
43. Astrid Mills
44. Michael Meede
45. Charles Patterson
46. Dreyana Patterson
47. Vancois Wilson

2

1

2

**DOE PLAINTIFFS**

3
4
5
6
7
8

2. DOE PLAINTIFFS 1-2,000 are former or current residents of TREASURE ISLAND, consisting of individuals who have been living in, or had substantial contact with, the Treasure Island Community, from 2006 to the present but have not to date discovered the elements of their causes of action. This action will be amended to include those DOE PLAINTIFFS 1-2,000 when those PLAINTIFFS have ascertained and discovered each element of each cause of action against each of the named DEFENDANTS herein.

9
10
11

3. DEFENDANTS Tetra Tech, Inc. and Tetra Tech EC, Inc. are California corporations that have contracted with the United States Navy and United States government to perform clean-up and remediation services on Treasure Island in San Francisco.

12
13
14

4. DEFENDANTS Shaw Environmental, Inc. is a California corporation that has contracted with the United States Navy and United States government to perform clean-up and remediation services on Treasure Island in San Francisco.

15
16

5. DEFENDANTS TREASURE ISLAND DEVELOPMENT AUTHORITY, is a California entity under the municipality of the City of San Francisco.

17
18

6. DEFENDANTS TREASURE ISLAND HOMELESS DEVELOPMENT INITIATIVE, is a California entity under the municipality of the City of San Francisco.

19
20
21

7. DEFENDANT U.S. NAVY TREASURE ISLAND CLEAN UP DIRECTOR JIM SULLIVAN, was employed by the United States Navy at all times relative to this complaint. This individual is being sued in his ***individual capacity***.

22

23

1    8. DEFENANT U.S. NAVY TREASURE ISLAND CLEAN UP LEAD PROJECT

2    MANAGER DAVID CLARK, was employed by the United States Navy at all times relative to

3    this complaint. This individual is being sued in his ***individual capacity***.

4    9. DEFENDANT U.S. NAVY ENVIRONMENTAL COORDINATOR KEITH

5    FORMAN, was employed by the United States Navy at all times relative to this complaint. This

6    individual is being sued in his ***individual capacity***.

7    10. DEFENDANT STATE DEPARTMENT OF TOXIC SUBSTANCE CONTROL is a

8    California entity under the authority of the state of California.

9    11. DEFENDANT SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH is a

10   entity under the authority of the City and County of San Francisco.

11   12. DEFENDANT JOHN STEWART COMPANY is a corporation doing business in the

12   State of California and the City and County of San Francisco;

13   13. DEFENDANT Lennar, Inc. is headquartered in Miami, Florida and is doing business

14   in California. DEFENDANT Five Point Holdings, LLC is headquartered in Aliso Viejo,

15   California.

16

17                              **DOE DEFENDANTS**

18   14. The true names and capacities, whether individual, corporate, associate, subsidiary,

19   officer, director, employee, other representative, or otherwise, of DOE DEFENDANTS 1

20   through 50 inclusive, are unknown to the PLAINTIFFS, who therefore sue each DEFENDANT

21   by a fictitious name. PLAINTIFFS are informed and believe and thereupon allege that each of

22   these fictitiously named DEFENDANTS are responsible, in some manner, for the damages

23   alleged herein. PLAINTIFFS therefore designate DOE DEFENDANTS 1 through 50 by such

4

fictitious names, and when their names have been ascertained, PLAINTIFFS will amend this complaint to allege their true names and capacities.

## II. JURISDICTION AND VENUE

15. Jurisdiction is pursuant to California Code of Civil Procedure § 382 providing: "When the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." This court also has jurisdiction under California Business & Professions Code §17203. Venue is proper in this judicial district because  TREASURE ISLAND RESIDENTS' injuries, damages and harms occurred in this judicial district.

16. Further, one or more of the DEFENDANTS reside, are headquartered and conduct business in this judicial district. DEFENDANTS' wrongful acts and omissions are giving rise to PLAINTIFFS' claims for restitution and equitable relief.

## IV. RESPONDEAT SUPERIOR

17. All of the described conduct, acts, and failures to act are attributed to agents and employees under the direction and control, and with the permission, consent and authorization of DEFENDANTS. Said acts, conduct and failures to act were within the scope of such agency and/or employment, and each of the DEFENDANTS ratified, endorsed, and agreed to the acts and omissions of each of the other DEFENDANTS. Each of these acts and failures to act is alleged against each DEFENDANT, whether acting individually, jointly, or severally. At all times relevant herein, each DEFENDANT was acting within the course and scope of his or her employment, agreement, and ratification.

## V. STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

18. Treasure Island ("Site") is a deactivated U.S. Naval Base located in San Francisco, California, adjacent to San Francisco Bay.

19. Treasure Island, an infill project located in the San Francisco Bay, was created by the federal government in the late 30s to host the 1939 Golden Gate International Expo, and was later converted to a naval base as the US prepared for World War II.

20. By 1997, the Navy entered into agreements with the City and County of San Francisco to turn over the Island for civilians to reside on it.

21. The goal then was to grow the island's population from 2,000 to 19,000 with the development of high rises and infrastructure across the old base, which was projected to cost $1.5 billion.

22. However, soil at the site is contaminated with radioactive waste, with nuclear byproducts on the island that were "higher than [the] Navy disclosed.

23. The US Navy had not properly assessed the levels of cesium-137, a fission byproduct, in soil samples dating back to the 1970s. In reality, contamination levels are some three times higher than the Navy reported, and 60 percent higher than the Navy's own safety guidelines.

24. A 2006 survey by the Navy found that while problems occasionally happened, nuclear activities at the Treasure Island base were closely regulated and frequently inspected.

25. This 2006 report intentionally ignored decades of audits that found poor safety procedures for radiation and toxic removal at the island.

26. In 2007, as the Navy readied to hand the island over to the City of San Francisco, a study by a civilian contractor named Robert McLean found the island to be far more contaminated with radiation than the Navy disclosed to the public.

6

27. The Navy chose not to revise its 2006 historical radiation survey swiftly to incorporate the new knowledge and instead, military officials continued to proceed as though the 2006 report were accurate, not updating it until 2012.

28. Even after its 2012 update, the Navy failed to account for the base's history of lax radiation safety or for dangers posed by ships irradiated at Bikini Atoll.

29. In 2012, reporters from the Center of Investigative Reporting launched a yearlong investigation that revealed mishaps and omissions by the Navy and its contractors in the Treasure Island cleanup.

30. It is alleged based on information and belief that DEFENDANTS Tetra Tech, Inc. and Tetra Tech EC, Inc. were aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

31. It is alleged based on information and belief that DEFENDANTS Shaw Environmental, Inc. were aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

32. It is alleged based on information and belief that DEFENDANTS TREASURE ISLAND DEVELOPMENT AUTHORITY, were aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

33. It is alleged based on information and belief that DEFENDANTS TREASURE ISLAND HOMELESS DEVELOPMENT INITIATIVE, were aware that the levels of radiation

on Treasure Island was significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

34. It is alleged based on information and belief that DEFENDANT U.S. NAVY TREASURE ISLAND CLEAN UP DIRECTOR JIM SULLIVAN, was aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

35. It is alleged based on information and belief that DEFENANT U.S. NAVY TREASURE ISLAND CLEAN UP LEAD PROJECT MANAGER DAVID CLARK, was aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

36. It is alleged based on information and belief that DEFENDANT U.S. NAVY REPRESENTATIVE KEITH FORMAN, was aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

37. It is alleged based on information and belief that DEFENDANT STATE DEPARTMENT OF TOXIC SUBSTANCE CONTROL was aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

38. It is alleged based on information and belief that DEFENDANT SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH was aware that the levels of radiation on Treasure Island were significantly higher than the Navy disclosed to the public and that this Defendant also chose not to disclose this information to the Plaintiffs.

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## VII. CLASS ACTION ALLEGATIONS

39. PLAINTIFFS bring this lawsuit as a class action and on behalf of themselves and all others who are similarly situated. The class is composed of all persons who WERE RESIDENTS OR ARE RESIDENTS OF TREASURE ISLAND, consisting of individuals who have been living, working, attending school or had substantial contact with the community from 2007 to present.

40. The members of the class are so numerous, approximately 2,000 residents, that joining them all individually would be impracticable. PLAINTIFFS don't know the exact number of the members of the class at this time, but the number and identity of the class members is easily ascertainable through DEFENDANTS' business records.

41. PLAINTIFFS have the same interest in this matter as all other members of the class.

42. PLAINTIFFS' claims are typical of all the members of the class.

43. A well-defined community of interest in the questions of law and fact involving all members of the class exists.

44. Common questions of law and fact predominate over questions that may affect only individual class members.

**Questions of Law:**

1. The nature and application of DEFENDANTS' statutory and common law duties to avoid unfair and fraudulent business practices;

2. The nature and application of DEFENDANTS' statutory and common law duties to avoid false and misleading communications about the remediation of radiation and toxins on

Treasure Island, which is causing harm, fear, mental and emotional distress to all PLAINTIFFS;

3.  The nature and application of the DEFENDANTS' duties with respect to the operation, management and supervision of the soil remediation and clean-up operation of Treasure Island;

4.  DEFENDANTS' applicable standard of care with respect to the operation, management and supervision of the remediation of radiation and clean-up operation of Treasure Island.

**Common Questions of Fact:**

1.  Did DEFENDANTS breach their statutory and common law duties to avoid false and misleading communications about the soil remediation and clean- up operation of Treasure Island?

2.  Did DEFENDANTS breach their duties with respect to the operations, management and supervision of the soil remediation and clean-up operation of Treasure Island?

45. PLAINTIFFS' claims are typical of all class member claims because all class members' claims arise from DEFENDANTS' failure to disclose to the Plaintiffs and to the public about the levels or radioactive materials and other toxins located in the soil of Treasure Island.

46. The evidence and the legal issues regarding the DEFENDANTS' wrongful conduct are substantially identical for PLAINTIFFS and all of the class members.

47. DEFENDANTS have acted or failed to act on grounds generally applicable to all class members, making equitable relief—e.g., restitution to each class member—appropriate to the class as a whole.

48. The court should certify the class because common questions of law and fact predominate over individual questions. Legal issues regarding duty and standard of care are common to all class members' claims. Factual issues regarding breach and the measure of restitution are common to all class members' claims.

49. A class action is superior to all other available procedures for the fair and efficient adjudication of these claims. Even if any individual class member could afford individual litigation, it would be unduly burdensome to the courts in which the separate lawsuits would proceed. A single class action is preferable to separate, individual lawsuits because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.

**REPRESENTATIVE PLAINTIFFS ANDRE PATTERSON and FELITA SAMPLE**

50. Are both educated, articulate, professionals who will fairly and adequately protect the interests of the members of the class.

51. PLAINTIFFS do not have interests that are contrary to or in conflict with those of the members of the class they seek to represent. PLAINTIFFS' undersigned counsel is experienced and capable of managing a class action of this anticipated size and complexity, and will vigorously prosecute the class claims.

52. The prosecution of separate, individual lawsuits by individual members of the class would create a risk of inconsistent or contradictory findings of fact and law—which could impose incompatible standards of conduct for DEFENDANTS—and would lead to repetitious trials of the numerous common questions of fact and law.

53. PLAINTIFFS know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of these claims.

54. Class members may be identified and notified of developments in this class action through state or nationwide publications.

55. PLAINTIFFS and class members have suffered financial losses and irreparable harm as a result of DEFENDANTS' wrongful conduct. Without a class action, PLAINTIFFS and members of the class will continue to suffer losses, thereby allowing DEFENDANTS' wrongful conduct to proceed without remedy, and allowing DEFENDANTS to retain the proceeds of their ill-gotten profits, contrary to California law and public policy.

## FIRST CAUSE OF ACTION

### (FALSE AND MISLEADING STATEMENTS)
### (Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)

56. PLAINTIFFS and class members hereby incorporate allegations contain in the preceding paragraphs, as though fully set forth herein.

57. DEFENDANTS' wrongful conduct constitutes unfair and fraudulent business practices that have in fact deceived PLAINTIFFS and class members in violation of California Business & Professions Code § 17500.

58. DEFENDANTS made untrue and misleading statements about the implementation, execution, disposition, discharge, clean-up, and remediation of radiation and toxins at Treasure Island.

**SECOND CAUSE OF ACTION**

**(NEGLIGENCE FEAR OF CANCER)**

**(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)**

59. PLAINTIFFS and class members hereby incorporate allegations contained in the preceding paragraphs, as though fully set forth herein.

**60.** That Plaintiffs were exposed to radiation, carcinogens and other toxic substances, as a result of Defendants' negligent conduct for failing to disclose to the Plaintiffs and the public the true levels of radioactivity on Treasure Island;

61. That the Defendants' conduct was despicable and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of the Plaintiffs' rights;

62. That Defendants intentionally misrepresented or concealed a material fact known to the Defendants, intending to cause Plaintiffs harm;

63. That the Plaintiffs suffered serious emotional distress from a fear that they will develop cancer as a result of the exposure;

64. That reliable medical or scientific opinion confirms that the Plaintiffs' risk of developing cancer, was significantly increased by the exposure and has resulted in an actual risk that is significant; and

65. That the Defendants' conduct was a substantial factor in causing Plaintiffs' serious emotional distress.

66. DEFENDANTS acted with malice or oppression, or fraudulent or intent in exposing Plaintiffs to carcinogens and toxic substances, and that this conduct caused Plaintiffs to suffer serious emotional distress.

### THIRD CAUSE OF ACTION

### (STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITIES)

**(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC. JOHN STEWART COMPANY and DOES 1-100)**

67. PLAINTIFFS and class members hereby incorporate allegations contained in the pre ceding paragraphs, as though fully set forth herein.

68. DEFENDANTS, and each of them, engaged in an ultra-hazardous activity that caused harm, damages, losses, injuries, including fear of contracting cancer, birth defects for their children, born and unborn, and economic and non-economic damages.

69. DEFENDANTS, and each of them, are responsible for that harm, injuries, damages, both economic and noneconomic because DEFENDANTS engaged in remediation of nuclear waste, radioactive materials, an ultra-hazardous activity at Treasure Island.

70. PLAINTIFFS' injuries, damages, losses, fear and harm are the kind of harm that would be anticipated as a result of the risk created by exposure to a radiation release as the nature and kind that was released at Treasure Island.

71. DEFENDANTS' acts, conduct and behavior proximately caused harm and damage to the PLAINTIFFS, including personal injury, property damage, loss of enjoyment of their property and life, the need for periodic examination and treatment, as well as economic losses including loss of earnings, stigma damages, the cost of obtaining potential cure, and other

needless expenditures of time and money. PLAINTIFFS will continue to incur losses and damage in the future. Based on PLAINTIFFS' repeated exposure to ionizing radiation, PLAINTIFFS have a reasonable fear that said exposure more likely than not increases their risk of developing cancer in the future.

72. DEFENDANTS' acts, conduct and behavior proximately caused harm and damage to the PLAINTIFFS, including personal injury, pain, anxiety, mental and emotional distress, discomfort, fear, incontinence, suffering, property damage, loss of enjoyment of their property and life, the need for periodic examination and treatment, as well as economic losses including loss of earnings, stigma damages, the cost of obtaining potential cure, and other needless expenditures of time and money.

73. DEFENDANTS' misconduct was deliberate, and undertaken with oppression, fraud or malice within the meaning of *California Civil Code § 3294*, justifying an award of exemplary damages sufficient to punish DEFENDANTS and to deter them from such misconduct in the future.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**(VIOLATION OF PROPOSITION 65)**

**(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)**

74. PLAINTIFFS and class members hereby incorporate allegations contained in the preceding paragraphs, as though fully set forth herein.

1    75. Proposition 65 California Health and Safety Code sections 25249.5 - 25249.13

2  imposes: "Prohibition On Contaminating Drinking Water With Chemicals Known to Cause

3  Cancer or Reproductive Toxicity.

4    76. That Proposition 65 Section 25249.6 required the Defendants to disclose and warn the

5  Plaintiffs of the exposure to chemicals known to cause cancer or reproductive toxicity.

6    77. That since 2007, all DEFENDANTS breached this duty when they failed to comply

7  with Proposition 65 by failing to notify Treasure Island Plaintiffs that they were releasing

8  radioactive materials in the air, and by failing to give warning that DEFENDANTS were leaving,

9  covering over, paving under, and covering up radioactive materials on the grounds of Treasure

10  Island.

11    78. DEFENDANTS' acts, conduct and behavior proximately caused harm and

12  damage to the PLAINTIFFS, including personal injury, pain, anxiety, mental and emotional

13  distress, discomfort, fear, incontinence, suffering, property damage, loss of enjoyment of their

14  property and life, the need for periodic examination and treatment, as well as economic losses

15  including loss of earnings, stigma damages, the cost of obtaining potential cure, and other

16  needless expenditures of time and money.

17    79. DEFENDANTS' misconduct was deliberate, and undertaken with oppression, fraud

18  or malice within the meaning of *California Civil Code § 3294*, justifying an award of exemplary

19  damages sufficient to punish DEFENDANTS and to deter them from such misconduct in the

20  future.

21  WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

22

23

1

2

3

4

5

**FIFTH CAUSE OF ACTION**

**(PUBLIC NUISANCE)**

**(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)**

6

7

80. PLAINTIFFS and class members hereby incorporate allegations contained in the preceding paragraphs, as though fully set forth herein.

8

9

10

11

12

81. DEFENDANTS, and each of them, engaged in negligent, reckless, intentional, and criminal conduct by deliberately and premeditatedly leaving and placing radioactive soil on Treasure Island, fully aware that dust, debris, and radionuclides would blow with the prevailing winds over the Treasure Island Community and cause life threatening permanent injuries and death.

13

14

15

16

17

18

19

82. Plaintiffs suffered harm because DEFENDANTS created a nuisance. DEFENDANTS, by leaving radioactive materials and other toxins on Treasure Island, created conditions that were harmful and injurious to health and life; were offensive to the senses; were an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and property; unlawfully obstructed the free passage or use, in the customary manner; and created other dangerous conditions to Treasure Island by contaminating ground water, soil for vegetation, lawns, and the quality of the air that the Plaintiffs have to breathe.

20

21

22

83. Ordinary people would be reasonably annoyed, disturbed and offended by DEFENDANT'S conduct in failing to disclose that they left radioactive soil in the densely populated residential community.

23

17

84. DEFENDANTS' conduct was a substantial factor in causing the Plaintiffs' injuries, losses and harms, including, but not limited to, cancer, asthma, respiratory failure, heart attack, stroke and fear of contracting other life-long injuries.

85. DEFENDANTS' misconduct was deliberate, and undertaken with oppression, fraud or malice within the meaning of California Civil Code § 3294, justifying an award of exemplary damages sufficient to punish DEFENDANTS and to deter them from such misconduct in the future.

WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

## (PRIVATE NUISANCE)

**(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)**

86. PLAINTIFFS and class members hereby incorporate allegations contained in the preceding paragraphs, as though fully set forth herein.

87. DEFENDANTS interfered with the Plaintiffs' use and enjoyment of their land by acting or failing to act as hereinabove described, by leaving radioactive materials and other toxins on Treasure Island.

88. Based on their conduct, the Defendants created conditions that were harmful and injurious to health and life; were offensive to the senses; were an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and property; unlawfully obstructed the free passage or use, in the customary manner; and created other dangerous

1  conditions to the Plaintiffs' property by contaminating ground water, soil for vegetation, lawns,

2  and the quality of the air that they had to breath.

3        89. DEFENDANTS' acts, conduct and behavior proximately caused harm and damage to

4  the PLAINTIFFS, including personal injury, pain, anxiety, mental and emotional distress,

5  discomfort, fear, incontinence, suffering, property damage, loss of enjoyment of their property

6  and life, the need for periodic examination and treatment, as well as economic losses including

7  loss of earnings, stigma damages, the cost of obtaining potential cure, and other needless

8  expenditures of time and money.

9        90. DEFENDANTS' misconduct was deliberate, and undertaken with oppression, fraud

10  or malice within the meaning of California Civil Code § 3294, justifying an award of exemplary

11  damages sufficient to punish DEFENDANTS and to deter them from such misconduct in the

12  future.

13  WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

14                            **SEVENTH CAUSE OF ACTION**

15                               **(CONSPIRACY)**

16  **(Against SHAW ENVIRONMENTAL, JIM SULLIVAN, DAVID CLARK, KEITH**
   **FORMAN, TETRA TECH EC, INC.; DAN L. BATRACK, LENNAR INC; FIVE POINT**

17  **HOLDINGS, LLC., JOHN STEWART COMPANY and DOES 1-100)**

18        91. That all named Defendants conspired and planned to intentionally falsify statements

19  to the Plaintiffs and the public regarding the true levels of radiation contamination on Treasure

20  Island and to not issue true disclosures and warnings regarding the true levels of toxins and other

21  hazardous waste on Treasure Island.

22

23

24

**EIGHTH CAUSE OF ACTION**

**INJUNCTIVE RELIEF**

**(Against TREASURE ISLAND DEVELOPMENT AUTHORITY; TREASURE ISLAND HOMELESS DEVELOPMENT INITIATIVE; STATE DEPARTMENT OF TOXIC SUBSTANCE CONTROL; SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH; LENNAR, INC., FIVE POINT HOLDINGS, LLC and Does 1 to 100)**

92. PLAINTIFFS and class members hereby incorporate allegations contained in the preceding paragraphs, as though fully set forth herein.

93. DEFENDANTS, and each of them, are aware that their remains dangerous levels of radiation on Treasure Island which endangers the local community and any other people who eventually relocate there.

94. PLAINTIFFS have repeatedly demanded that DEFENDANTS stop any development on Treasure Island until thorough, complete, and verified test results prove that all the toxins and radioactive materials have been removed, but DEFENDANTS have ignored PLAINTIFFS' demands.

95. PLAINTIFFS have suffered and will continue to suffer irreparable injury unless and until this Court enjoins DEFENDANTS from continuing their wrongful conduct. DEFENDANTS' wrongful conduct is ongoing and threatens to be continued in the future.

96. PLAINTIFFS have no adequate remedy at law for the injuries suffered. An award of monetary damages would not provide an adequate remedy because money damages cannot replace safety, health and lives lost from exposure to radiation and other toxins confirmed now at Treasure Island.

1    97. An INJUNCTION is the only remedy available to PLAINTIFFS to protect

2  themselves, and the general public.

3  WHEREFORE, Plaintiffs pray judgment as hereinafter set forth.

4  **PRAYER FOR RELIEF**

5  WHEREFORE, PLAINTIFFS pray judgment against DEFENDANTS as follows:

6      1.  For an order requiring DEFENDANTS to show cause, if any they have, why they should

7          not be enjoined as set forth in this complaint, during the pendency of this action;

8      2.  For a preliminary injunction, enjoining DEFENDANTS, and each of them, and their

9          agents, servants, and employees, and all persons acting under, in concert with, or for

10         them to:

11         a. Take "anticipatory action" to prevent harm and through exploration of

12         current toxicity and careful analysis of courses of action in order to present the least

13         threat to residents on Treasure Island and;

14         b. Conduct an immediate Health and Safety assessment for residents, workers and

15         students on Treasure Island.

16     3.  DEFENDANTS, and each of them, must be ordered to STOP ALL DEVELOPMENT,

17         CONSTRUCTION, BUILDING, DIGGING, ERECTING, DISTURBING THE SOIL,

18         DIRT, EARTH, BUILDINGS, STRUCTURES, PIPES, AND ALL ACTIVITY AT

19         TREASURE ISLAND UNTIL INDEPENDENT VERIFIED REPORTS CAN BE

20         OBTAINED SHOWING COMPLETE AND TOTAL REMEDIATION OF ALL TOXIC

21         SUBSTANCES, INCLUDING ALL RADIOACTIVE MATERIALS FROM Treasure

22         Island;

23

4.   Monetary damages in the amount of $2 billion dollars,

5.   For costs of suit incurred in this action; and

6.   For such other and further relief as the Court deems proper.

WHEREFORE, further PLAINTIFFS and members of the Class request that the

Court enter an order or judgment against DEFENDANTS, and each of them as named in the

future, as follows:

1.   For an order certifying the Class, appointing PLAINTIFFS and their counsel to represent the Class, and notice to the Class to be paid by DEFENDANTS;

2.   For an injunction ordering DEFENDANTS to cease and desist from seeking to engage in any additional remediation at Treasure Island.

3.   For an order requiring DEFENDANTS to immediately pay for medical screenings for early detection of any radiation related medical conditions.


Date: April 7, 2020

LAW OFFICE OF STANLEY GOFF

_____/s/ STANLEY GOFF_____
STANLEY GOFF
Attorney for Plaintiffs

22